ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 25 2016

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| SEALED, | |
| PLAINTIFF/RELATOR, | CIVIL ACTION NO. |
| v. | 1:16-CV-0230 |
| SEALED, | FILED UNDER SEAL |
| | 31 U.S.C. §§ 3729-32 |
| DEFENDANT. | JURY TRIAL DEMANDED |

## SEALED COMPLAINT PURSUANT TO 31 U.S.C.A. § 3730(b)(2)

Pursuant to 31 U.S.C. § 3730(b)(2), this Complaint is to be filed *in camera* and shall remain under seal and shall not be served upon Defendant until so ordered by this Honorable Court.

Additionally, pursuant to the terms of Standing Order 04-01 (III)(A), no Notice of Manual Filing is required and this Complaint shall not be accessible on the ECF system.

M. Travis Foust
Georgia Bar No. 104996
tfoust@pcwlawfirm.com

PARKS, CHESIN & WALBERT, P.C
75 Fourteenth Street, 26th Floor
Atlanta, GA 30309
(404) 873-8000 Telephone
(404) 873-8050 Facsimile
*Counsel for Plaintiff/Relator*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S D.C. - Atlanta

JAN 25 2016

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

NICHOLAS P. SCHROEDER on behalf
of The UNITED STATES OF AMERICA

PLAINTIFF/RELATOR,

v.

THE BOEING COMPANY,

DEFENDANT.

CIVIL ACTION NO.

1:16-CV-0230

FILED UNDER SEAL
31 U.S.C. §§ 3729-32
JURY TRIAL DEMANDED

**FALSE CLAIMS ACT COMPLAINT
"QUI TAM"**

The United States of America, by and through *qui tam* Relator, Nicholas P. Schroeder ("Schroeder"), brings this action under 31 U.S.C. §§ 3729 *et seq.,* (The "False Claims Act") to recover from The Boeing Company ("Boeing") for all damages, penalties, and other remedies available under the False Claims Act on behalf of the United States and himself and shows unto the Court the following:

**PARTIES**

1.  Relator, Nicholas P. Schroeder, is an individual and a citizen of the United States of America residing in Powder Springs, Georgia.

2

2. Defendant The Boeing Company ("Boeing") is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 North Riverside Plaza, Chicago, Illinois, 60606.

3. Boeing is actively authorized to do business in the State of Georgia and conducts significant business operations within the State of Georgia and within this Division of the United States District Court for the Northern District of Georgia.

4. Boeing may be served with process through its registered agent for service of process, Corporation Service Company, located at 40 Technology Parkway Southsuite 300, Gwinnett County, Norcross, Georgia, 30092. Upon proper service of the Summons and Complaint, Boeing will be subject to the jurisdiction of this Honorable Court.

## JURISDICTION AND VENUE

5. This Court maintains subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) (False Claims Act) and 28 U.S.C. § 1331 (Federal Question).

6. Venue is proper in this Court under 31 U.S.C. § 3732(a) because Boeing manufactures and sells its products throughout the Northern District of Georgia, as well as throughout the United States, including operations related to

3

the allegations contained in this Complaint. Boeing has substantial business operations located within this jurisdiction located at 1775 Aviation Boulevard, SW, Atlanta, Georgia, 30354.

7. The allegations contained herein are not based on information that has been disclosed to the public through any means, including: criminal, civil, or administrative hearings in which the government is a party, government hearings, audits, reports, or investigations, or through the news media. 31 U.S.C. § 3730(e)(4)(A).

8. Schroeder has personally gathered all the documentation and information substantiating the allegations herein.

9. Schroeder has personal and independent knowledge of the facts and allegations contained herein.

## FACTS

### Plaintiff's Work in the CAD Group for Defendant

10. Boeing is engaged in, among other things, the research, development, manufacture, and sale of: Aerospace and Aircraft technology, Satellites, Launch Vehicles, etc., for use across the United States and worldwide.

11. Boeing often contracts branches of the United States Government Departments and Agencies, bidding on opportunities to manufacture its products for the Government use.

12.     In approximately 2007, the National Aeronautics and Space Administration ("NASA") first awarded Boeing a contract to develop and build the core stage of the Space Launch System (SLS), the most powerful rocket ever built, to be used to transport American astronauts and technology into space.

13.     As of July 2014, Boeing's contract with NASA to build the core stages of the SLS rocket system was finalized and valued at more than $2,800,000,000 to Boeing.

14.     According to Boeing's press release announcing its winning of the final stages of the contract, "Our teams have dedicated themselves to ensuring that the SLS – the largest ever -- will be built safely, affordably and on time." http://boeing.mediaroom.com/NASA-and-Boeing-Sign-Space-Launch-System-Contract

15.     Schroeder was employed directly by Kord Technologies, Inc. ("Kord") of Huntsville, Alabama.

16.     Kord acts as an engineering staffing company for Boeing's operations in Hunstville, Alabama, and elsewhere.

17.     As expressly allowed and contemplated in the contract between NASA and Boeing, Kord entered into a contract with Boeing to provide employees to Boeing to work on the SLS program contract.

18. Schroeder was staffed through Kord to work within Boeing's CAD Integration Group ("CAD") to perform CAD services for the SLS rocket system.

19. Schroeder worked in the CAD Group at the Boeing facility with occasional remote work from his home in Georgia.

20. The CAD Group's work involves the use of computer systems to aid in the creation, modification, analysis, or optimization of the engineering designs and drawings for the SLS rocket system.

21. In performing this role, the CAD Group members act as the "final set of eyes" to ensure that engineering drawings for the SLS rocket system components meet exacting engineering specifications and that the drawings are viable designs that will allow the SLS system to operate properly and safely.

22. Specifically, members of the CAD Group in which Schroeder was employed would accept, review for accuracy and correctness, and then approve or reject Change Notices for engineering drawings of SLS rocket parts, assemblies, or component parts before the drawings were released for use in the manufacture/fabrication of the actual SLS rocket component parts.

23. After the CAD Group reviews the engineering drawings, the drawings are submitted to NASA to be released for manufacture, making the CAD Group's "last stop" work critical to the viability of the final SLS component part.

24. The engineering drawings that are approved by the CAD Group are provided to NASA in Portable Document Format, or "PDF."

25. Because the drawings provided to NASA by the CAD Group are in PDF format, if there is an error in the drawing on the CAD side, it will not be reflected in the PDF document itself and will not be apparent to NASA.

26. Given its use in the largest rocker system ever built, the work performed by the CAD Group for Boeing is essential to the safety and well-being of astronauts, NASA employees, other government employees, federal contractors, and the public at large.

27. During Schroeder's employment with Boeing, Kord invoiced Boeing for Schroeder's services performed in the CAD Group and in turn paid Schroeder.

28. Boeing invoices NASA for all hours spent working by the members of the CAD Group, with infrequent exceptions for non-billable meetings and training, and submits claims for payment to NASA based on the number of hours worked by such CAD Group members regardless of whether the CAD Group members are employed by a third-party contractor such as Kord or are direct employees of Boeing.

29. Boeing was a joint employer of Schroeder along with Kord in that Boeing controlled Schroeder's work rules, assignments, provided day to day supervision, and otherwise controlled the terms and conditions of his employment.

### Plaintiff Learns that NASA is Being Charged for Work that is Not Performed or Not Properly Confirmed as Safe and Viable.

30. In approximately December 2013 and January 2014, while working in the CAD Group on the SLS system, Schroeder observed that another member of the CAD Group, Brent Cole ("Cole"), a direct employee of Boeing, was regularly absent from work.

31. Schroeder became aware that during this time period, Cole was actively working in a side business, the Salty Nut Brewery in Huntsville, Alabama, which Cole co-owned with other CAD Group employees of Boeing.

32. Despite the fact that Cole was regularly absent, Schroeder learned through his personal review of the Change Notices for component drawings and other CAD Group records and documentation, including system log-in reports, that Cole was still recording substantial work hours for CAD Group-related review job duties, including overtime hours, all of which are 100% billable to NASA, during times that Cole did not appear to be present at Boeing.

33. Concerned that CAD work was being improperly completed and submitted to the Government, and in an effort to confirm whether Cole was actually working the hours that he was reporting, Schroeder reviewed the number

8

of Change Notices that were turned in as "completed" by Cole and other Boeing employees involved in the side brewery business.

34. During his review and as a result of the review, Schroeder found that there were very few Change Notices being completed or properly completed by Cole during the hours that Cole was reporting.

35. Also during his review of the Boeing documentation, Schroeder discovered that Cole was actually approving Change Notices after one to two minutes of review, which was a grossly insufficient amount of time to properly review and approve the drawings for engineering soundness or design correctness using the proper CAD standards.

36. Additionally, Schroeder determined that Cole was "grabbing" multiple Changes Notices, i.e. selecting and downloading for review and approval, and then approving them in bulk, a process that is not possible if each drawing is to be correctly reviewed using proper procedures.

37. Schroeder determined that multiple drawings that had been approved by Cole and that were subsequently submitted to NASA contained significant errors.

38. Schroeder also learned from his review of the Change Notice activity logs that Cole was logging in remotely to Boeing's data management system,

charging for the time during which he was logged-in, yet performing no work during these remote log-in sessions.

### Schroeder Reports the Fraudulent Work and Billing Practices To Boeing But His Reports are Ignored

39.     Upon learning of his co-workers' fraudulent billing and work activity, Schroeder reported the information to the superiors and owner of Kord and informed them that he intended to address the matter with Boeing directly.

40.     Beginning in January 2014, Schroeder went directly to Daniel Barron ("Barron"), the Boeing executive responsible for the CAD Group's work on the SLS program.

41.     Schroeder reported Cole's fraudulent billing and work practices to Barron and expressly stated his staunch opposition to the fact that Cole and others were causing false claims for payment to be submitted to NASA.

42.     Schroeder also provided Barron with documentation supporting his complaints, including the Change Notices and the log-in reports for Cole's activity.

43.     Schroeder further expressed his concern to Boeing that as a result of the fraudulent claims for work that was not actually being performed but which was being billed, the Change Notices were not being properly reviewed and approved, meaning that NASA would be accepting and paying Boeing for potentially faulty and unsafe SLS rocket component parts.

44. Barron expressed his concerns about the complaints and assured Schroeder that he would escalate the matter up through the Company and that Boeing's Human Resources Department would investigate his concerns.

45. Schroeder has learned that Cole did subsequently meet with Human Resources following his complaints, but Boeing that took no action against Cole at that time.

46. Additionally, after Schroeder's meeting with Barron, the CAD Group began reporting to Sheila Sharp at Boeing instead of Barron.

47. Sharp was a close personal friend of Cole's, so much so that a beer at Cole's Salty Nut Brewery was named after her.

48. Following his meeting with Barron and Barron's replacement by Sharp, Schroeder continued to monitor Cole's time reporting and work activity based on Boeing's apparent lack of action.

49. Cole continued to record time where he purportedly was performing CAD Group-related design and drawing review services but during which time either no work was being performed by Cole or the work was being performed for substantially less time than what was being reported.

50. Schroeder documented Cole's continued submission of false time reports and approval of Change Notices without spending adequate time on the review process.

11

51. Schroeder continued to gather documentation and voice his opposition to his co-worker's fraudulent practice of submitting false claims, to Boeing's refusal to take remedial action, and to Boeing's continued submission of the false claims to NASA.

52. Boeing, however, continued to bill NASA for the falsely and inaccurately reported time.

53. Rather than terminate or discipline the wrongdoers, Boeing terminated Schroeder's contract to provide personal services in the CAD Group on January 23, 2015. No reason was provided.

## CAUSE OF ACTION

### COUNT I

*Violations of the False Claims Act, 31 U.S.C. § 3729, et seq.*

54. Schroeder incorporates all of the foregoing allegations as if fully stated herein.

55. Based upon the acts described above, Boeing knowingly violated the False Claims Act.

56. After being made aware of the fraudulent time submissions being made by its employees (e.g., Brent Cole), Boeing knowingly presented, or caused to be presented these false or fraudulent claims for payment and/or approval when it billed NASA for the time that Boeing employees were not actually working.

57. After being made aware of the deficient and/or fraudulent work being performed by its employees (e.g., approving Change Notices after one to two minutes of review), Boeing knowingly made, used, or caused to be made or used, a false record or statement to obtain a false or fraudulent claim paid or approved by the Government, when it billed NASA for work that was performed insufficiently or not performed at all.

58. The United States, unaware of the falsity of these claims, records, and statements made by Boeing, and in reliance on the accuracy thereof, paid money to Defendant for the fraudulent claims.

59. In submitting requests for payment for hours that employees were not working on a contract with the Government or for work that was not properly completed, Boeing and/or its agents have violated, and continue to violate, 31 U.S.C. § 3729(a)(1)(A), because it has knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval.

60. In submitting requests for payment for hours that employees were not working on a contract with the Government or for work that was not properly completed, Boeing and/or its agents have violated, and continue to violate, 31 U.S.C. § 3729(a)(2), because they have knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

61.     In submitting requests for payment for hours that employees were not working on a contract with the Government or for work that was not properly completed, Boeing and/or its agents have violated, and continue to violate, 31 U.S.C. § 3729(a)(3), by conspiring to defraud the U.S. Government by getting a false or fraudulent claim allowed or paid.

62.     In submitting requests for payment for hours that employees were not working on a contract with the Government, Boeing and/or its agents have violated, and continue to violate, 31 U.S.C. § 3729(a)(1)(C), by conspiring to commit a violation of subparagraphs (A) or (B).

63.     The Government has suffered and is continuing to suffer damages as a proximate result of the actions of Boeing, because it has paid and is continuing to pay amounts that were not due.

## COUNT II

### *Violations of the False Claims Act, 31 U.S.C. § 3730(h)*

64.     Schroeder incorporates all of the foregoing allegations as if fully stated herein.

65.     Schroeder engaged in protected activity when he reported the instances of fraud to Boeing executives and opposed Boeing's attempt to have fraudulent claims paid or approved by the United States Government.

66. Boeing either knew or should have known at the time of Schroeder's opposition that his complaints reasonably could lead to litigation and/or a viable False Claims Act action.

67. After expressing his opposition to the fraudulent practices, Schroeder was thereafter discriminated against when his employment with Boeing was terminated.

68. Boeing had knowledge of Schroeder's protected activity and retaliated against him because Schroeder engaged in that protected activity.

69. The United States and the general public have been damaged as a result of Defendant's violations of the False Claims Act.

70. Schroeder has likewise been damaged as a result of Defendant's violation of the retaliatory provisions of the False Claims Act, 31 U.S.C. § 3730(h).

## JURY DEMAND

71. Plaintiff hereby demands a trial by jury on all claims set forth herein that are so triable.

## PRAYER FOR RELIEF

72. For the reasons set forth above, Schroeder, on behalf of the United States, respectfully requests this Court to find that Defendant has damaged the

United States Government as a result of its conduct, in violation of the False Claims Act.

WHEREFORE, Schroeder prays that this Court enter judgment against Defendant for all applicable damages, including but not limited to the following:

- a. Damages in an amount of three times the actual damages suffered by the Government;
- b. Civil penalties of not less than $5,000 and not more than $10,000 per violation;
- c. Relator seeks a fair and reasonable amount of any award for his contribution to the Government's investigation and recovery pursuant to 31 U.S.C. §§ 3730(b) and (d) of the False Claims Act;
- d. Two times the amount of back pay due Schroeder, plus pre- and post-judgment interest;
- e. Attorney's fees and costs awarded to Schroeder pursuant to 31 U.S.C. § 3730;
- f. Pre-judgment and post judgment interest; and
- g. All other relief on behalf of the Schroeder and/or United States Government to which they may be entitled at law or equity.

/s/ M. Travis Foust
_____
M. Travis Foust
Georgia Bar No. 104996
tfoust@pcwlawfirm.com

PARKS, CHESIN & WALBERT, P.C
75 Fourteenth Street, 26th Floor
Atlanta, GA 30309
(404) 873-8000 Telephone/(404) 873-8050 Facsimile
***Counsel for Plaintiff***

17

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| NICHOLAS P. SCHROEDER on behalf of The UNITED STATES OF AMERICA | |
| PLAINTIFF/RELATOR, | CIVIL ACTION NO. |
| v. | |
| THE BOEING COMPANY, | FILED UNDER SEAL<br>31 U.S.C. §§ 3729-32<br>JURY TRIAL DEMANDED |
| DEFENDANT. | |

## **CERTIFICATE OF SERVICE**

This is to certify that I have this date served counsel for the United States of America with a copy of the foregoing COMPLAINT via certified mail to:

*Counsel for the United Stated of America*

John A. Horn, Esq.
United States Attorney in the Northern District of Georgia
United States Attorney's Office
Richard B. Russell Federal Building
75 Spring Street, SW - Suite 600
Atlanta, GA 30303-3309

Loretta E. Lynch, Esq.
U.S. Attorney General
Office of the Attorney General
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

M. Travis Foust
Georgia Bar No. 104996
tfoust@pcwlawfirm.com

PARKS, CHESIN & WALBERT, P.C
75 Fourteenth Street, 26th Floor
Atlanta, GA 30309
(404) 873-8000 Telephone
(404) 873-8050 Facsimile
***Counsel for Plaintiff***